IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JUAN PICADO-BLANDON,                    §
                                        §
              *Petitioner*,             §
                                        §
v.                                      §      No. 1:26-CV-01021-DAE
                                        §
COLLINS, *et al.*,                      §
                                        §
              *Respondents*.            §

## ORDER

Before the Court is Petitioner Juan Picado-Blandon's ("Petitioner")

Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. # 1).  The Court

finds this matter suitable for disposition without a hearing.  After careful

consideration of the parties' briefings and the relevant law, the Court **GRANTS** the

Petition for Writ of Habeas Corpus (Dkt. # 1) for the reasons that follow.

## FACTUAL BACKGROUND

Petitioner Picado-Blandon is a citizen of Nicaragua who is currently

being detained at the T. Don Hutto Detention Center in Taylor, Texas.  (Dkt. # 1 at

3.)  Around May 2022, Petitioner entered the United States without inspection.  (Id.

at 4.)  At that time, Petitioner turned himself in voluntarily to U.S. Border Patrol

agents.  (Dkt. # 9 at 1.)  He was detained for approximately two days before he was

released on his own recognizance.  (Id.)  Since his entry, Petitioner has complied

with the conditions of his release, complying with all reporting obligations and appearing for all required check-ins. (Dkts. ## 1 at 5; 9 at 2.) In July 2024, Petitioner also filed an application for asylum. (Dkt. # 1 at 4.) That application remains pending. (Id.)

In his almost four years in the country, Petitioner has built a life here. (Dkts. ## 1 at 4; 9 at 2.) Since his release in May 2022, Petitioner has resided continuously in the United States. (Dkt. # 1 at 4.) He is married and has a 10-year-old son, who he lives with in San Marcos, Texas. (Dkts. ## 1 at 4; 9 at 2.) Petitioner is the primary provider for his family. (Dkt. # 9 at 2.) He works in construction full-time and regularly attends church in his community. (Id.)

On April 9, 2026, Petitioner was walking to a store when he was arrested by local police officers for public intoxication. (Dkts. ## 9 at 5; 7-1 at 2.) Petitioner believes that no charges were ever filed against Petitioner in connection with this arrest. (Dkt. # 9 at 2.) Petitioner has no other criminal history and no criminal convictions. (Id.)

While Petitioner was being detained at the Hays County Jail, Immigration and Customs Enforcement ("ICE") officials secured an arrest warrant for Petitioner. (Dkt. # 7-1 at 2.) ICE officials arrested Petitioner after he was released from Hays County Jail on April 10, 2026. (Id.) Petitioner was

subsequently transferred to the T. Don Hutto Detention Center, where he remains detained without the possibility of a bond hearing.  (Dkt. # 1 at 5.)

## PROCEDURAL HISTORY

On April 21, 2026, Petitioner filed his habeas petition.  (Dkt. # 1.)  On April 23, 2026, this Court ordered Respondents Charlotte Collins, Warden of the T. Don Hutto Detention Center; Miguel Vergara, Field Office Director, San Antonio Field Office, Immigration and Customs Enforcement ("ICE"); Secretary of the Department of Homeland Security ("DHS"); United States Attorney General; Todd M. Lyons, Director of U.S. Immigration and Customs Enforcement; and DHS (collectively, "Respondents") to show cause within three days as to why the petition should not be granted.  (Dkt. # 5.)  Respondents Miguel Vergara, Secretary of the Department of Homeland Security ("DHS"), U.S. Attorney General, Todd M. Lyons, and DHS (herein, "Federal Respondents")[1] timely filed a response to the Petition on April 27, 2026.  (Dkt. # 7.)  Petitioner filed an additional responsive brief after the Court issued an order for supplemental briefing.  (Dkt. # 9.)

## LEGAL STANDARD

A district court may grant a writ of habeas corpus if a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."

---

[1] Respondent Collins, Warden of the T. Don Hutto Detention Center, has not joined the response.

3

28 U.S.C. § 2241.  The habeas petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence."  Villanueva v. Tate, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (internal citation and quotations omitted).  "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'"  Id. (quoting 28 U.S.C. § 2243).

DISCUSSION

In his Petition, Petitioner challenges his mandatory detention as a violation of the Immigration and Nationality Act ("INA") and his Fifth Amendment due process rights.  (Dkt. # 1 at 7–9.)

I.     Subject Matter Jurisdiction

As an initial matter, the Court finds that it has jurisdiction over this case for the same reasons stated in previous orders.  Campuzano v. Noem, No. 1:25-cv-1715-DAE, 2026 WL 90062 (W.D. Tex. Jan 6, 2026); Fabian-Granados v. Bondi, No. 1:25-cv-2068-DAE, 2026 WL 90061 (W.D. Tex. Jan. 8, 2026); Silva v. Bondi, No. 1:25-cv-2155-DAE, 2026 WL 90060 (W.D. Tex. Jan. 12, 2026).  The Court also finds that, to the extent an administrative exhaustion requirement would normally apply in this situation, "[b]ecause Respondents argue the detention of Petitioner is mandatory, claiming no one, including the [immigration judge], can

review the detention issue, any attempt to require Petitioner to exhaust any administrative remedies [would be] futile." See Lorenzo C. P., v. Noem, No. 1:25-CV-181, 2025 WL 3684859, at *5 (S.D. Tex. Oct. 31, 2025); see also Shi v. Lyons, No. 1:25-CV-274, -- F. Supp. 3d --, 2025 WL 3637288, at *4 n.6 (S.D. Tex. Dec. 12, 2025); (Dkt. # 6 at 1 (asserting that Petitioner is ineligible for bond before an immigration judge)).

II.      The Merits of the Petition for Writ of Habeas Corpus

          Having concluded that it has jurisdiction over Petitioner's claims, the Court turns to the merits of Petitioner's habeas petition.  Because the Court finds that Petitioner's detention violates his right to procedural due process under the Fifth Amendment of the United States Constitution, it does not reach Petitioner's other bases for relief.[2]  The Court's analysis proceeds in two steps: first, the Court

---

[2] To the extent Federal Respondents argue that the Fifth Circuit's recent decision in Buenrostro-Mendez v. Bondi, --- F.4th ---, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026), prevents this Court's review of the Petitioner's due process claims, the Court, like other courts that have considered the question, finds such an argument unpersuasive.  See Valencia Reyes v. Noem, et al., No. SA-25-CA-01921-XR, Dkt. # 7, at *6–8 (W.D. Tex. Feb. 25, 2026) (collecting cases).  Indeed, the Fifth Circuit's decision was limited only to that petitioner's statutory interpretation arguments and did not reach any issue of whether a petitioner's detention violated the Fifth Amendment.  See Buenrostro-Mendez, 2026 WL 323330.  The Government acknowledged as much in their oral arguments by stating: "We have one issue before the Court now: the statutory question. . . . There's not, in other words, a due process claim here."  Oral Argument, Buenrostro-Mendez, 2026 WL 323330, at 44:56–45:11 (5th Cir. Feb. 3, 2026), available at https://www.ca5.uscourts.gov/OralArgRecordings/25/25-20496_2-3-2026.mp3.

will discuss whether and to what extent procedural due process applies to

Petitioner; and second, the Court will analyze whether Petitioner's due process

rights were violated.

First, the Court concludes that Petitioner is entitled to due process

protections.  The Fifth Amendment's Due Process Clause prevents the Government

from "depriv[ing]" any "person . . . of liberty . . . without due process of law."

U.S. CONST. amend. V.  This right is not limited to United States citizens;

noncitizens are similarly entitled to due process under the Fifth Amendment.

Trump v. J. G. G., 604 U.S. 670, 673 (2025);  Demore v. Kim, 538 U.S. 510, 523

(2003). "Freedom from imprisonment—from government custody, detention, or

other forms of physical restraint—lies at the heart of the liberty that Clause

protects."  Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (citing Foucha v.

Louisiana, 504 U.S. 71, 80 (1992)).  Petitioner's case does not materially differ

from those that this Court has recently considered and determined that procedural

due process protections apply.  See Gomez-Gonzalez v. Vergara, No. 5:26-CV-598-

DAE, 2026 WL 594364 (W.D. Tex. Feb. 27, 2026); Acosta Espana v. Ortega, No.

1:26-CV-00300-DAE, 2026 WL 594362 (W.D. Tex. Mar. 2, 2026); Guzman

Sanchez v. Bondi, No. 1:26-CV-00379-DAE, 2026 WL 594365 (W.D. Tex. Feb.

27, 2026); JAIRO ENRIQUE RAGA ALEMAN, Petitioner, v. HOMAN, et al.,

Respondents. Additional Party Names: Beatriz Adriana Aleman Lopez, No. 1:26-

6

CV-00529-DAE, 2026 WL 752450 (W.D. Tex. Mar. 16, 2026).  Accordingly, for the reasons described in the Court's prior orders, Petitioner may bring a procedural due process claim.

Having found that Petitioner is entitled to due process protection under the Fifth Amendment, the Court turns to whether Petitioner's arguments are meritorious.  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  Mathews, 424 U.S. at 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).  "To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in Mathews[.]"  Martinez v. Noem, No. 5:25-cv-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025).  Those factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335.

The first factor weighs heavily in Petitioner's favor.  "'The interest in being free from physical detention' is 'the most elemental of liberty interests.'"  Martinez v. Noem, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025) (quoting

Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004)).  In this case, Petitioner lived his life in the United States for nearly four years prior to his recent detention.  "The Supreme Court has repeatedly affirmed that '[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" Hernandez-Lara v. Lyons, 10 F.4th 19, 27 (1st Cir. 2021) (citing United States v. Salerno, 481 U.S. 739, 755 (1987)).  This interest "deserves great weight and gravity" and thus weighs heavily in Petitioner's favor.  See Vieira, 806 F.Supp.3d at 701.

On the second factor, courts consider "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks."  Martinez v. Noem, 2025 WL 2598379, at *3 (quoting Gunaydin v. Trump, 784 F.Supp.3d 1175, 1187 (D. Minn. 2025)).  Here, there is a high risk of erroneous deprivation of Petitioner's liberty since he is being detained without the opportunity for an individualized bond hearing, depriving him of the ability to contest the reasonableness of his detention.[3]  See Vieira, 806 F.Supp.3d at 701 ("The risk lies

---

[3] This is so notwithstanding Petitioner's recent arrest for public intoxication and ICE's procurement of a warrant.  The question before the Court is what process is due to Petitioner before he can be detained without an opportunity for a bond hearing.  Here, there has been no determination made before a neutral arbiter that Petitioner poses a danger to the community or a flight risk.  Nor has Petitioner been afforded any process by which to challenge such a determination.  The risk of erroneous deprivation, then, is high.

in the automatic continued deprivation of liberty . . .").  There would be significant value added by additional safeguards, such as a bond hearing or pre-detention notice, that would reduce the likelihood of an erroneous loss of liberty.  This is particularly true for Petitioner, who has received no individualized explanation as to the decision to re-detain him after years of living free of detention.  "[A]bsent some change in [Petitioner's] personal circumstances, the decision to incarcerate [him] after [] years at liberty gives rise to an elevated concern that [he] has been detained without a valid reason."  Santiago v. Noem, EP-25-cv-361-KC, 2025 WL 2792588, at *12 (W.D. Tex. Oct. 2, 2025); see also Valencia Reyes, No. SA-25-CA-01921-XR, Dkt. # 7, at *24.  Thus, this factor also weighs in Petitioner's favor.

The third factor is the Government's interest.  See Mathews, 424 U.S. at 335.  The Government has a legitimate interest "in ensuring that noncitizens appear for their removal hearings and do not pose a danger to the community." Lopez-Arevelo, 801 F.Supp.3d at 686–87.  But such an interest could be adequately protected through individualized bond hearings—process that the Government finds unnecessary.  As another court in this District stated: "Respondents make no meaningful representation that the burden of providing this additional increment of process is beyond their ability.  Instead, they only maintain that due process does not require it."  Valencia Reyes v. Noem et al., No. 5:25-cv-

1921-XR, at *25 (W.D. Tex. Feb. 25, 2026).  Accordingly, as applied to this Petitioner, this factor is neutral.

In weighing all three factors, the Court finds the scale tips in Petitioner's favor; thus, Petitioner's detention without an opportunity to challenge his detention through an individualized assessment violates his right to procedural due process under the Fifth Amendment of the United States Constitution.

I.    Appropriate Relief

On the issue of appropriate relief, the Court is persuaded that it need not depart from the "typical remedy" in habeas cases challenging the lawfulness of detention, which "is, of course, release."  See Munaf v. Geren, 553 U.S. 674, 693 (2008).  Further, ordering a bond hearing under these circumstances would require the Immigration Judge to do that which he believes he lacks authority to do following Matter of Yajure Hurtado, 29 I&N Dec. 216, 220 (BIA 2025).  The Court instead finds that the more appropriate remedy here is release.  See Azua-Zuniga v. Bondi et al., No. 1:26-cv-287-RP (W.D. Tex. Feb. 20, 2026) (finding support for the same remedy under similar circumstances); Valencia Reyes, No. SA-25-CA-01921-XR, Dkt. # 7, at 25 (same); Longoria Mendoza, No. 5:26-CV-0728-JKP, Dkt. # 9, at *17–18 (same).

Indeed, the Court notes its agreement that bond hearings are "no substitute for the requirement that ICE engage in a 'deliberative process prior to, or

contemporaneous with,' the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." Cruz-Reyes v. Bondi, No. 5:26-cv-60, 2026 WL 332315, at *6 (S.D. Tex. Feb. 3, 2026) (quoting Gonzalez v. Joyce, No. 25 Civ. 8250, 2025 WL 2961626 (S.D.N.Y. Oct. 19, 2025)). "The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment." Gonzalez, 2025 WL 2961626, at *5.

As a final matter, "[a]lthough Petitioner invokes jurisdiction under 28 U.S.C. §§ 1331 and 2241 and seeks attorney fees, the Court treats the instant action solely as a habeas action under § 2241." Davila Mercado v. Lyons, No. 5:25-CV-1623-JKP, 2025 WL 3654268, at *7 (W.D. Tex. Dec. 11, 2025). Here, as in Davila Mercado, Petitioner has not specifically sought any non-habeas relief and has paid only the minimal habeas filing fee. Accordingly, the Court denies any request for attorney's fees in this case. Id.; Aldana Perez v. Noem, et. al., No. SA-25-CV-01534-XR, 2025 WL 3654262, at *7 (W.D. Tex. Dec. 5, 2025); Barco v. Witte, 65 F.4th 782, 785 (5th Cir. 2023) (holding that the Equal Access to Justice Act does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions).

11

CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Petition for

Habeas Corpus.  (Dkt. # 1.)  It is **ORDERED** that:

1. Respondents are **DIRECTED** to **RELEASE** Petitioner Juan Picado-Blandon from custody, under conditions of release no more restrictive than those in place prior to the detention at issue in this case, to a public place by **no later than 5:00 p.m. on May 3, 2026**.

2. Respondents must **NOTIFY** Petitioner's counsel by email (liliana.t@springdalelaw.com) of the exact location and exact time of Petitioner's release as soon as practicable and **no less than two hours before his release**.

3. Respondents are further **DIRECTED** to **NOTIFY** the state prosecutor in Petitioner's state court case of Petitioner's pending release, if there are in fact charges and those charges remain pending.

4. Respondents are enjoined from further detaining Petitioner without first conducting a bond hearing, scheduled with notice to Petitioner's attorneys and set at a date agreed upon by both parties.  At such a hearing, Respondents bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Petitioner's detention.

5. The parties shall **FILE** individual status reports no later than **6:00 p.m. May 4, 2026**, detailing their compliance with this Order.

   **IT IS SO ORDERED**.

   **DATED**: Austin, Texas, May 1, 2026.

   _____
   David Alan Ezra
   Senior United States District Judge

12